ISAAC M. BULL *v*. THE VALLEY FALLS COMPANY.

A court of equity will not enjoin the owners of a mill, below on a stream, from so raising their dam as to flow back the water upon a watered meadow, belonging to the owners of a mill above, and a drain rightfully used by them for the purpose of relieving their meadow from water taken from their mill trench, during irrigation; the meadow and drain being no part of the mill privilege of the latter, and their remedy for such injury being, exclusively, under Ch. 88 of the Revised Statutes, commonly called the "mill act."

THIS was a bill in equity, filed by the plaintiff as the owner of the Hamlet estate and mills, on the Blackstone river, to enjoin the defendants, as owners of the Manville estate and mills below, on the same river, from flowing out an intermediate dam, called the "Mott Dam," through which, and under the pond raised by which, the plaintiff had drained a watered meadow of about twenty-five acres, which lay along the river at the lower portion of his mill estate. In 1826, the Hamlet dam and the Mott dam were both erected by the Blackstone Canal Company, for canal purposes, upon the land of Stephen H. Smith, and at each dam a mill privilege was thereby created. By agreements between the Canal Company and Smith, the use of these dams by the former, for canal uses, and by the latter, for mill uses, was regulated; under which, Smith stipulated to keep the same in repair whenever he used the water. At the Hamlet dam, a large cotton mill was built,—the same now owned and used by the plaintiff; at the Mott dam no mill was ever built, but the same was used to raise water for the uses of the canal only, until, in 1849, the canal was abandoned. On the Hamlet estate, west of the pond formed by the Mott dam, is a watered meadow, of about twenty-five acres, which is rendered valuable by being irrigated by water drawn out of the Blackstone river above, through the trench of the Hamlet mill, and which, being led over ·the meadow by various drains, is discharged through a culvert leading from the meadow under and through the Mott dam, into the river below. On the 14th day of May, 1836, Smith being then the owner of the Hamlet estate and of the Mott dam, conveyed

the latter to the firm of Jenkins & Man, then the owners of the Manville mill estate next below on the Blackstone river, by deed of quitclaim, which contained the following clause :—

" Also, the grantor reserves to himself, his heirs and assigns, forever, the right of keeping, having and maintaining and rebuilding the drain, as now built, from his watered meadow, on the west side of the pond by said Mott dam, through said pond and dam, for the purpose of draining the water off said meadow ; and no more water is to be drawn through said drain than is actually used for irrigating said meadow."

The plaintiff, by mesne conveyances, has succeeded Stephen H. Smith in his title to the Hamlet estate, embracing the watered meadow and the right to drain the same through and under the Mott dam and the pond raised thereby ; and the defendants have succeeded Messrs. Jenkins & Man, as owners of the Manville estate below, and of the Mott dam, intermediate on the river between said estate and the Hamlet estate.

In 1826, the Mott dam was constructed eight $\frac{20}{100}$ feet higher than the Manville dam ; the Hamlet dam, nine feet higher than the Mott dam ; the three absorbing the whole fall of this portion of the river. The bottom of the culvert or meadow drain through the Mott dam, was about five feet above the Manville dam. In 1838, Messrs. Jenkins & Man, electing to use so much of the Mott privilege at Manville, raised their Manville dam about two feet ; and again, in 1852, about one foot. In 1861 and 1862, after the estate had been purchased by the defendants, they again raised the dam so as to flow out the plaintiff's culvert or meadow drain through the Mott dam, and upon his watered meadow, claiming the right so to do under the mill act, subject to the remedy for the plaintiff thereby provided. It was to enjoin against this flowage, that this bill was filed ; the bill, indeed, alleging that the flowage extended to the wheels of the plaintiff's grist mill ; but no point being made at the argument, upon that ground, except as coupled with the ground of aban-

donment of the Mott dam, and the attention of the court not being directed to any evidence in support of it.

*Clarke*, *with whom was Bradley, for the complainant:* —

I.   The Mott dam was kept up by the Canal Company until 1848, for their sole use; and the non-user of it by the defendants and their antecessors in the title, for mill purposes, from 1836 to 1861, a period of twenty-five years, was an abandonment of it for all mill purposes, except so far as its rights of flowage had been used at the Manville dam.   This abandonment, followed by the putting in of a grist-mill wheel in 1855, and a brass wheel in the Hamlet mill, in 1858, prevents any further flow by the owners at Manville than up to the bottom of the culvert; their stopping in their flow at which point, until 1861, shows, that for twenty-five years they believed, that under their deed as they construed it themselves, they had no further right to flow.

II.   The reservation in the deed of Smith to Jenkins & Man, operated as a condition of the grant of the Mott dam, and limits and restricts it.   It was clearly the intent of the parties, that the rights appertaining to the Mott dam were to be used only at its location; and this intent must govern.   *Tillinghast* v. *Fry*, 1 R. I. Rep. 53; *Bridge* v. *Wellington*, 1 Mass. 219; *Wallis* v. *Wallis*, 4 Ib. 135; *Perry* v. *Peirce*, 7 Ib. 381; *Grey, Administrator*, v. *Clark*, 11 Vt. 584.   A party taking a deed poll, containing a reservation or condition, and going into possession under it, is bound by the condition, to the same extent as if he had executed a covenant to that effect.   *Taylor* v. *Weld*, 5 Mass. 109; *Carey* v. *Rawson*, 8 Ib. 159; *Scott* v. *McFarland*, 13 Ib. 310; *Newell* v. *Hill*, 2 Metc. 181; *Mendell* v. *Delano*, 7 Ib. 176; *Bonca* v. *Connor*, 6 Cush. 136; *Rood* v. *Johnson*, 26 Vt. 71; *Gibson* v. *Tyson*, 5 Watts, 41.

III.   Where a deed may enure in several ways, the grantee has a right to elect which way to take it; but is bound by his election.   *Jackson* v. *Hudson*, 3 Johns. 376.   If a deed be ambiguous, and one construction of it will enable one of the parties to overreach the other, the practical construction of it by

both parties, for years, will govern. *Irwin* v. *United States*, 16 How. 513.

*T. A. Jenckes, for the defendants:* —

I. A court of equity will not give relief by injunction in a case like this, where the water way alleged to be injured is an artificial one, and a complete and adequate remedy exists at law for any injury done to it. Here is no obstruction of a natural watercourse; no diversion of a stream from the complainant's mills; no back flowage on his mills; no falling down of the banks of a river, whereby the adjacent lands of the complainant are exposed to inundation or his mills to destruction, the only classes of nuisance cases relative to water rights, in which equity interferes by injunction. Angell on Watercourses, § 446; 2 Story's Eq. Jurisp. § 927.

II. The bill is framed as a nuisance bill, the allegations set forth a nuisance, and the prayer asks relief from a nuisance, and for no other cause, and under no other head, of equity jurisdiction. The argument abandons the whole ground of nuisance, and claims that the complainant is entitled to some relief, because there is an implied contract or covenant in the deed, by which Jenkins & Man, the defendants' grantors, acquired the title to the Mott dam estate. This claim is set forth in the bill, but no portion of the prayer for relief is based upon it; if it had been, the bill would have been bad for multifariousness. As the case now stands, the allegations of nuisance having been abandoned, and the bill being nothing more than a nuisance bill, it should be dismissed for want of equity.

III. If this is to be considered as a bill to enforce a contract, it has no equity whatever. Grant that the reservation in the deed from Smith to Jenkins & Man, and also with the land, is so as to bind the Mott dam in the hands of the defendants, it is not the use of the Mott dam that is complained of, but the raising of the dam on the Manville estate,—another estate, and derived under an entirely different title.

IV. The defendants, as owners of the Manville estate, have a right, under the mill act, to flow out the complainant's watered meadow, and his drain appurtenant to it, by paying damages;

the drain being no part of the Hamlet mill privilege, but an incumbrance upon it.

V.    There has never been any abandonment of the Mott dam by Jenkins & Man, or by the defendants, as the proof fully shows.

AMES, C. J.    The plaintiff, as the successor to the rights of Stephen H. Smith, has, under the reservation in Smith's deed to Jenkins & Man, of the Mott dam and the land about it, an easement to conduct the water by a drain from his watered meadow through said land and dam, to the river below; and were it not for the "mill act," as it is called (Ch. 88, of the Revised Statutes), we should not hesitate, upon the proof in this case in support of the allegations of the bill, to enjoin the defendants from the destructive waste of backing water upon the meadow, and into the drain which relieves it when irrigated, as quite within the jurisdiction of a court of equity, and as the appropriate relief to be afforded by it.    The utmost effect, however, that we can give to the above reservation is, that it constitutes the plaintiff owner of such an easement, for the benefit of his watered meadow.    Neither the meadow nor the easement are a part of his mill privilege, nor protected against the right of the defendants as owners of the Manville privilege below, to flow both the meadow and the drain, under the provisions of the mill act, subject exclusively to the remedy provided by it. To this remedy we must remit the plaintiff; and as those portions of the bill which relate to the abandonment by the defendants of the Mott dam, and the acquisition by the plaintiff of rights by user to place his mill wheels lower, as against it, are not supported by the proof, we must dismiss this bill, with costs.